United States District Court
Northern District of Indiana
Hammond Division

| | |
|---|---|
| C.O., a minor, by and through his father Louis O'Banion, and LOUIS O'BANION, individually, | )<br>)<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | )<br>) |
| | ) Case No. 3:07-CV-106 JVB |
| CITY OF SOUTH BEND, KEENAN LANE, EDWARD KOCZAN, and SCOTT ROSS, | )<br>)<br>)<br>) |
| Defendants. | ) |

**OPINION AND ORDER**

**A. Background**

In March 2005, a South Bend Police officer saw C.O. with what he thought was a handgun. After this officer approached C.O. and asked him about the gun, he told the officer the gun was a toy—which it was—and placed it on the hood of the squad car. He then fled and the officer called out a foot pursuit on the police radio. Five to ten minutes later, two other officers detained C.O. with the help of an unleashed South Bend Police canine. One of the officers tased C.O., and the other struck C.O. in the back of the head with a flashlight or baton. C.O.'s foot was severely injured from the dog's bite.

Following this incident, C.O. and his father Louis O'Banion sued Officers Keenan Lane, Edward Koczan, and Scott Ross; Police Chief Thomas Fautz, individually and in his official capacity; and the City of South Bend pursuant to 42 U.S.C. § 1983. Namely, they claimed that the police officer Defendants violated C.O.'s Fourth Amendment right to be free from unlawful

1

search and seizure. They claimed that Police Chief Fautz and the City of South Bend failed to train officers and maintained policies that caused the violation of C.O.'s civil rights.

The Court previously dismissed Defendant Police Chief Thomas Fautz. The remaining Defendants have moved for Summary Judgment. In their Response, by their failure to address the issue, Plaintiffs concede that they have no valid claim that the City of South Bend is liable for a failure to train their police officers; but Plaintiffs maintain that the City is liable for its unconstitutional policy. The unlawful search and seizure claim remains against Officers Lane, Koczan, and Ross.

**B. Summary Judgment Standard**

The Federal Rules of Civil Procedure mandate that motions for summary judgment be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "In other words, the record must reveal that no reasonable jury could find for the nonmoving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotation marks omitted). Rule 56(c) further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A party seeking summary judgment bears the initial responsibility of informing a court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes

demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The moving party may discharge its "initial responsibility" by simply " 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the non-moving party's case." *Id.* at 325. When the non-moving party would have the burden of proof at trial, the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim. *Id.* at 323, 325; *Green v. Whiteco Indus., Inc.*, 17 F.3d 199, 201 n.3 (7th Cir. 1994); *Fitzpatrick v. Catholic Bishop of Chi.*, 916 F.2d 1254, 1256 (7th Cir. 1990). However, the moving party may, if it chooses, support its motion for summary judgment with affidavits or other materials and thereby shift to the non-moving party the burden of showing that an issue of material fact exists. *Kaszuk v. Bakery & Confectionery Union & Indus. Int'l Pension Fund*, 791 F.2d 548, 558 (7th Cir. 1986); *Bowers v. DeVito*, 686 F.2d 616, 617 (7th Cir. 1982); *Faulkner v. Baldwin Piano & Organ Co.*, 561 F.2d 677, 683 (7th Cir. 1977).

Once a properly supported motion for summary judgment is made, the non-moving party cannot resist the motion and withstand summary judgment by merely resting on its pleadings. Fed. R. Civ. P. 56(e); *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994). Federal Rule of Civil Procedure 56(e) establishes that "the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts to establish that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see also Anderson v. Liberty Lobby*, 477 U.S. 242, 248–50 (1986). Thus, to demonstrate a genuine issue of fact, the non-moving party must do more than raise some metaphysical doubt as to the material facts; the non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Juarez v. Ameritech Mobile Comm., Inc.*, 957 F.2d 317, 322 (7th Cir. 1992). Conclusory allegations and self-serving affidavits, if not supported

by the record, will not preclude summary judgment. *Haywood v. N. Am. Van Lines, Inc.*, 121 F.3d 1066, 1071 (7th Cir. 1997).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences and resolve all doubts in favor of that party. *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995); *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994); *Beraha v. Baxter Health Care Corp.*, 956 F.2d 1436, 1440 (7th Cir. 1992). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson*, 477 U.S. at 249–50; *Doe*, 42 F.3d at 443.

**C. Material Facts**

C.O. lived in South Bend at 1343 W. Fisher Street with his Father, Louis O'Banion, and his Grandmother. (South Bend Police Department – Case Report, 3/14/05; C.O. Dep. 22:3–4). At the time of the events in question, C.O. was fourteen and weighed 110 pounds. (Pl.'s Br. Opp'n Def. Lane's Mot. Summ. J., 7).

On March 14, 2005, at about 8:30 pm, C.O. was walking to his friend's house to have BB gun wars. (C.O. Dep. 87:12–20). He was on the sidewalk near 1600 W. Dunham Street when Officer Keenan Lane drove by him and noticed he was cradling a black handgun. (Lane Aff. ¶ 2). Lane knew C.O. very well from the neighborhood. (C.O. Dep. 62:20–23; 86:18–21). He called out to C.O., "[C.O.], come here," and asked him what he had on him. (C.O. Dep. 16:9–22). C.O. said he had a toy gun and put it on the hood of the squad car. (*Id*. at 17:13–4). The gun had a marble-sized, bright orange plastic tip on the end of the chamber. (*Id*. at 34:16–35:16). Lane

4

believed that the gun was real. (Lane Aff. ¶ 17). Lane then tried to detain C.O., but C.O. ran away. (C.O. Dep. 17: 16–22). Lane caught up to him and grabbed him, but C.O. escaped. (*Id*. at 20:15–21:16; 66:20–21).

While he was attempting to detain C.O., Lane made several calls on the police radio. He said that he had spotted an armed white male (Ross Aff. ¶ 6); that "someone needs to get to my car because the gun's there" (Lane Dep. 55:11–12); that he was in foot pursuit of the suspect (Ross Aff. ¶ 6); and that the suspect's name was "[C. O.]" and he lived on 1300 block of Fisher Street (Lane Dep. 66:20–67:6). Lane consented to the dispatch of a canine unit.[1]

The second officer involved was Officer Edward Koczan. Koczan responded to Lane's call for assistance. Lane instructed Koczan to secure the gun that C.O. had left at Lane's car; Koczan complied. (Koczan Dep. ¶ 4). When he found the gun, the magazine had been detached from the body. (*Id*. at ¶ 5). Koczan was asked at deposition why he didn't announce over the radio that the gun was a toy. He said that would have been irrelevant to the matter at hand, which was that C.O. was resisting police by flight. (Koczan Dep. 72:25–76:18). However, Koczan believed C.O. was potentially armed during the foot pursuit of C.O. (Koczan Aff. ¶ 18).

The third and final officer involved in the incident was canine handler, Scott Ross. (Ross Aff. ¶ 5). Ross and his dog, Nikko, responded to Lane's call and began searching for C.O. (Ross Dep. 50:2–6). Ross believed that C.O. was "potentially armed." (Ross Aff. ¶ 7). For this reason, he did not have Nikko on a tracking leash. (Ross Dep. 50: 2–6).

About five or ten minutes after the initial stop, Ross spotted C.O. and commanded Nikko to detain him. (C.O. Dep. 23: 1–6; Ross. Dep. 52:11–53:7). Ross had kept Nikko silent and gave

---

[1] Lane Dep. 54:9–12:
> In a situation where you have a foot pursuit . . . I'm getting questions, people asking me, "What's your last location? Where do you want a perimeter set up?" . . . You know, I'm trying to give them information. You know, "Where are you at right now? I'll send canine – I'll send a canine unit to your location." "Okay. I'm right here."

C.O. no warning when he released the dog. (Ross Dep. 56:11–21; C.O. Dep. 23:10–21). But C.O. heard the dog and tried to get away on top of a parked car. (*Id.*) Nikko caught him and bit his left foot. (*Id.* at 24:17–18; 26:16–21). Then, without warning, Ross struck C.O. in the back of the head with either a baton or a flashlight. (*Id.* at 26:21–24). C.O. blacked out and fell to the ground. (*Id.* at 74:11–19). With C.O. facedown on the ground, Ross put his knee on C.O.'s back and yelled "[g]et your hands behind your back." (*Id.* at 75:6–8; 28:6). But C.O. couldn't because Ross's weight was pinning C.O.'s arms under his body. (*Id.* at 28: 2–9).

At this time, Koczan, the officer who had retrieved the gun from Lane's car earlier, arrived. He was the only officer that assisted Ross. (Koczan Aff. ¶ 7). Koczan immediately joined Ross, putting his knee in C.O.'s back and yelling, "[g]et your hands behind your back." (C.O. Dep. 75:6–8; 28:6). C.O. told them he was unable to get his hands out, but Koczan and Ross claim he was "refusing." (*Id.* at 80:15–81:4; Kozcan Aff. ¶ 9; Ross Aff. ¶ 11). So Koczan used his taser to stun C.O. (Koczan Aff. ¶ 11). With C.O. stunned, the officers pulled his arms out, handcuffed him, and took Nikko off his foot. (C.O. Dep. 28:15–18). C.O.'s left foot was badly injured from Nikko's bite. (*Id.* at 28:19–24).

C.O.'s injuries kept him in the hospital for five days: March 14–18, 2005. (Pl.'s Ex. P). The medical records list the following injuries:

1) Dog Bite Wound, resulting in a large avulsion laceration to the left anterior foot;
2) Puncture Wound to the mid leg;
3) Abrasion to the mid left thigh;
4) Two Taser Wounds to the Right Arm;
5) Left Posterior Pinna Contusion.

(Medical Records, Pl.'s Ex. P; *see also* Pl.'s Ex. R: pictures of C.O.'s left foot).

C.O. had to do outpatient therapy for six months, did not return to school for the remainder of the spring semester, and needed a skin graph on his foot. (*Id*. at 42:2–3; 43:22–25; 82:3–5). He now has a fear of dogs and does not trust authority figures. (*Id*. at 59:12–60:14).

The City of South Bend Police Department has a canine policy that lists the situations in which the "use" of a canine is justified. (South Bend Police Department Duty Manual and General Orders Sec. 206.07, Pl.'s Ex. M). The word "use" in this phrase can mean several things: 1) "bite and hold"; 2) "bark and surround"; 3) conducting searches; 4) tracking people on or off leash; or 5) being on "standby." (Katsaris Dep. 40:24–42:2).

**D. Section 1983 Standard**

Section 1983 is not a source of substantive rights. Instead, it provides "a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *City of Monterrey v. Del Monte Dunes at Monterrey, Ltd.*, 526 U.S. 687, 749 n.9 (1999). To prevail on a claim under § 1983, a plaintiff must show that "(1) the defendant deprived the plaintiff of a right secured by the Constitution and laws of the United States, and (2) the defendant acted under color of state law." *J.H. Exrel. Higgin v. Johnson*, 346 F.3d 788, 791 (7th Cir. 2003), citing *Reed v. City of Chi.*, 77 F.3d 1049, 1051 (7th Cir. 1996). A Plaintiff must show that the defendant was personally involved in depriving him of his constitutional rights. *See Walker v. Taylorville Corr. Ctr.*, 129 F.3d 410, 413 (7th Cir.1997).

A primary defense to a claim under § 1983 is qualified immunity. Qualified immunity shields officers from suit "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Sullivan v. Ramirez*, 360 F.3d 692, 696 (7th Cir. 2004), quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

"[T]he inquiry focuses on the objective legal reasonableness of the action, not the state of mind or good faith of the officials in question." *Delaney v. DeTella*, 256 F.3d 679, 686 (7th Cir. 2001). Qualified immunity is an entitlement not to stand trial or face the other burdens of litigation. *Saucier v. Katz*, 533 U.S. 194, 200 (2001).

"[P]laintiff bears the burden of showing the existence of allegedly clearly established constitutional right." *Clash v. Beatty*, 77 F.3d 1045, 1047 (7th Cir. 1996). Since qualified immunity gives public officials the benefit of the doubt, this burden is a difficult one. *See Kernats v. O'Sullivan*, 35 F.3d 1171, 1176 (7th Cir. 1994). This is the only burden a plaintiff must meet to overcome the defense of qualified immunity. *Pearson v. Callahan*, 129 S.Ct. 808, 818 (2009).

The parties agree that the individual Defendants acted under the color of state law at the time of the events giving rise to this litigation. Therefore, in addressing the Plaintiffs' § 1983 claims, the Court must decide only whether the Defendants deprived the Plaintiffs of rights secured by the Constitution and laws of the United States, and if so, whether the protected rights were clearly established at the time of the events in question.

**E. Discussion**

Plaintiffs allege that Defendants Lane, Koczan, and Ross violated C.O.'s Fourth Amendment right to be free from unreasonable searches and seizures by excessive use of force in detaining him. Defendant Lane insists that he never used force that could be considered excessive, as he was not present when C.O. was finally detained. Ross and Koczan both insist that their use of force was reasonable under the circumstances. In the alternative, all officers insist that they are entitled to qualified immunity.

Plaintiffs allege that the City is liable because it did not have a canine "use of force" policy; and that this lack of policy was the cause of Ross's violation of C.O.'s Fourth Amendment rights. The City insists that its canine policy did not cause C.O.'s injuries.

**(1) Excessive Use of Force**

"[A]ll claims that law enforcement officers have used excessive force . . . in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Acevedo v. Canterbury*, 457 F.3d 721, 724 (7th Cir. 2004). The dispositive question is whether the actions of the officers were "objectively reasonable" in light of the facts and circumstances that confronted the officers. *Graham v. Conner*, 490 U.S. 386, 397 (1989). This inquiry is to be made according to an officer's knowledge that was at the scene, not according to the "20/20 vision of hindsight." *Id.* at 396. Three factors should be considered in this inquiry: (1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of officers or others, and (3) whether he is actively resisting arrest by flight. *Id.*

Considering these three factors set forth in *Graham*, the Court finds that there is a genuine issue of fact as to whether the three officers violated C.O.'s Fourth Amendment rights. It is undisputed that officers Lane, Koczan, and Ross knew that C.O. was actively resisting arrest by flight. However is a genuine issue of fact as to whether Officer Lane knew that C.O. was unarmed, and, if so, whether he could have informed the other officers of this fact so that their force would be proportional to the circumstances. The Record also conflicts on the issue of whether Officers Koczan and Ross thought that C.O. was armed and thus posed an immediate

threat to them or to others. Until these disputes are resolved, the Court cannot say that the officers' use of the flashlight or baton, the dog, and the taser were justified as a matter of law.

This conflict of facts also prevents the Defendants' qualified immunity defense, which they are entitled to if their conduct did not violate clearly established constitutional rights of which a reasonable person would have known. *Sullivan v. Ramirez*, 360 F.3d 692, 696 (7th Cir. 2004). If the C.O.'s story is true, as the Court must assume at this juncture, no reasonable officer could have believed that the officers' actions were within the bounds of the Fourth Amendment.

**(2) Municipal Liability**

"[A] local government may not be sued under §1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom . . . inflicts the injury that the government is responsible under §1983." *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 694 (1979). The common law principle of *respondeat superior* will not establish municipal liability in a §1983 case. *Id.* at 692–694. Rather, a municipality will only be held liable when its official policy or practice *causes* a constitutional violation. *Hirsch v. Burke*, 40 F.3d 900, 904 (7th Cir. 1994).

Plaintiffs claim that the City is liable because its official policy gave Ross too much discretion in how he would use the canine. This is not enough. To meet the *Monell* standard, Plaintiffs must show that the City's official policy caused the violation of C.O.'s Fourth Amendment rights. *Hirsch*, 40 F.3d at 904. Plaintiffs presented no evidence to this end. Instead Plaintiffs argue that Ross's bad judgment caused the violation of C.O.'s Fourth Amendment rights without implicating any specific policy or official action that affirmatively authorized the

alleged violation. Accordingly, the City cannot be held liable for the alleged violation of C.O.'s constitutional rights.

**F. Conclusion**

As explained above, the Plaintiffs have not shown that the City of South Bend's official policy caused C.O.'s Fourth Amendment rights to be violated. Therefore, the Court grants Summary Judgment to the Defendants on the claim against the City of South Bend. However, there are genuine issues of fact regarding the claims against Officers Lane, Koczan, and Ross, which prevent Summary Judgment in their favor.

Accordingly, Defendants' motion for Summary Judgment [DE 47] is granted in part and denied in part.

SO ORDERED on July 30, 2009.

s/ Joseph S. Van Bokkelen  
JOSEPH S. VAN BOKKELEN  
UNITED STATES DISTRICT JUDGE